Hay, Judge,
delivered the opinion of the court:
The plaintiffs entered into a written contract to purchase from the United States Government-owned improvements near Newport News, Va., which included a group of buildings known as Camp Stuart, for which they agreed to pay the sum of $253,620, which sum was paid by them to the United States. Among the buildings at Camp Stuart was one known as the laundry building, a structure 300 feet long by 162 feet wide, which contained laundry equipment and machinery. Before making their bid or entering into the written contract the plaintiffs inspected the laundry building, as they were requested by the Government to do, and made inquiry at the office of the0camp utilities officer as to what equipment in the laundry building was to be included in the sale, and were told by the officer whose duty it was to give information, and who had been designated for that purpose by the officer with authority to give definite information to bidders, that the laundry equipment which would be reserved meant laundry machines that were used in washing and ironing clothes, such as ironers, washers, soap, tubs, etc., and that the piping, shafting, heating system, motors, boilers, etc., went with the building and passed to the purchaser. With this understanding the plaintiffs executed, the written contract.
The specifications, which were made a part of the contract, provided as follows:
“3. Reservations and exemptions.— (a) The following property is not included in this sale:
*631 “ Telephone and telegraph systems, fire-fighting apparatus and equipment, surgical equipment, kitchen equipment in embarkation hospital, refrigerating and ice-making machinery, laundry equipment, construction equipment, small tools, tents, rolling stock, livestock, bakery equipment, supplies, and surplus material or equipment. * * * ”
The Government, after the contract was signed and before the laundry building was delivered to the plaintiff, removed from the building, claiming to act under the provisions of the aforesaid specification, washing machines, flatwork iron-ers, starch machinery, shafting, pulleys, belting, steam pipes, and other things claimed by its employees to be laundry equipment. While this property was being removed the plaintiffs protested against the removal of any property except the machinery that was actually used in the washing and ironing of clothes.
The specifications, which were a part of the contract, provided as follows:
“(c) Any doubt as to the meaning of this specification or of the map accompanying the same, or any obscuritjr in the wording thereof, shall be interpreted by the Chief of the Construction Division of the Army, and his decision and instructions-necessary to complete the provisions of specification and consummate the sale shall be final.”
When the dispute arose between the plaintiffs and the representatives of the Government the plaintiffs carried their protest to the Chief of the Construction Division of the Army, who upon the protest being presented to him telegraphed to the commanding officer Army supply post, Norfolk, Va., as follows: “ Suspend operation on dismantling of Army equipment in laundry building until further advised by this office.” On May 11, 1920, the Chief of the Construction Division of the Army after having considered the claim of the plaintiffs rendered a decision in favor of the plaintiffs, which decision is set out in Findng IX. This decision is final, and will not be disturbed by this court. This doctrine is so well established that it is unnecessary to refer to the many decisions which the Supreme Court of the United States and this court have made upon this subject.
*632 The decision above set out was never carried into effect by the United States. The equipment was never returned to -the plaintiffs.
The plaintiffs have proved the value of the equipment removed by the United States, and a judgment must be awarded them for the value of the equipment removed. That value amounts to the sum of $46,162.68, and judgment for that amount will be entered in favor of the plaintiffs. And :it is so ordered.
Graham, Judge; Downey, Judge; Booth, Judge; and ‘Campbell, Chief Justice, concur.